UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELSEA MERCER, as Administrator of the Estate of Jennifer Ohlinger, deceased c/o R. Craig McLaughlin Elk & Elk Co., Ltd. 6105 Parkland Blvd. Suite 200 Mayfield Heights, OH  44124 | ) ) ) ) ) ) ) ) | Case No. Judge **COMPLAINT AND JURY DEMAND** |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| ATHENS COUNTY, OHIO c/o Lenny Eliason, Commissioner 15 S. Court Street, 2nd Floor Athens, OH  45701 | ) ) ) ) ) | |
| and | ) ) | |
| HOCKING COUNTY, OHIO c/o Gary Waugh, Commissioner 1 East Main Street Courthouse Logan, OH  43138 | ) ) ) ) ) ) | |
| and | ) ) | |
| MORGAN COUNTY, OHIO c/o Mike Reed, Commissioner 155 E. Main Street McConnelsville, OH  43756 | ) ) ) ) ) | |
| and | ) ) | |
| PERRY COUNTY, OHIO c/o Ben Carpenter, Commissioner 121 West Brown Street, Suite C New Lexington, OH  43764 | ) ) ) ) ) | |
| and | ) | |

| | |
|---|---|
| VINTON COUNTY, OHIO | ) |
| c/o Tim Eberts, Commissioner | ) |
| 100 East Main Street | ) |
| McArthur, OH  45651 | ) |
| | ) |
| and | ) |
| | ) |
| JAMES GRAY II, RN | ) |
| c/o Southeastern Ohio Regional Jail | ) |
| 16677 Riverside Drive | ) |
| Nelsonville, OH  45764 | ) |
| *in his individual and official capacity as* | ) |
| *the jail nurse* | ) |
| | ) |
| and | ) |
| | ) |
| CHARITY LOWERY | ) |
| c/o Southeastern Ohio Regional Jail | ) |
| 16677 Riverside Drive | ) |
| Nelsonville, OH  45764 | ) |
| *in her individual and official capacity as* | ) |
| *an officer at the jail* | ) |
| | ) |
| and | ) |
| | ) |
| AMISTA JARVIS | ) |
| c/o Southeastern Ohio Regional Jail | ) |
| 16677 Riverside Drive | ) |
| Nelsonville, OH  45764 | ) |
| *in her individual and official capacity as* | ) |
| *an officer at the jail* | ) |
| | ) |
| and | ) |
| | ) |
| CODY GILBRAITH | ) |
| c/o Southeastern Ohio Regional Jail | ) |
| 16677 Riverside Drive | ) |
| Nelsonville, OH  45764 | ) |
| *in his individual and official capacity as* | ) |
| *an officer at the jail* | ) |
| | ) |
| and | ) |
| | ) |
| JOSHUA D. VANBIBBER | ) |
| c/o Southeastern Ohio Regional Jail | ) |
| 16677 Riverside Drive | ) |

| | |
|---|---|
| Nelsonville, OH  45764 | ) |
| *in his individual and official capacity as* | ) |
| *the warden of the jail* | ) |
| | ) |
| Defendants. | ) |

## I.      PRELIMINARY STATEMENTS

1. This civil rights case challenges the denial of medical care to an inmate who was in serious medical distress, Jennifer Ohlinger, while she was in custody at the Southeastern Ohio Regional Jail ("SEORJ" or "Jail").

2. SEORJ was opened in 1998 and serves as the regional jail for the following counties in Ohio:  Athens, Hocking, Morgan, Perry, and Vinton.

3. Plaintiff brings this case in order to secure fair compensation for the violation of Jennifer Ohlinger's constitutional rights and to ensure and encourage the Defendants to provide adequate and timely medical treatment to similarly situated inmates at SEORJ in the future.

4. Plaintiff brings this case against the Defendants under the Fourteenth and/or Eighth Amendments of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for the injuries and death suffered by Jennifer Ohlinger, the decedent, as a result of the Defendants' substantial and deliberate indifference to decedent's health and welfare while in their custody. Plaintiff also states a claim against the Defendants for failure to train and supervise and failure to establish policies, procedures, and training which resulted in the subject incident.

5. The Defendants violated Jennifer Ohlinger's constitutional rights and were deliberately indifferent by a) deliberately ignoring and failing to heed to decedent's serious medical condition; b) failing to adequately assess the decedent; c) failing to contact a doctor; d) failing to

transfer the decedent to a hospital for diagnostic testing and emergency treatment; and e) other acts and behaviors.

## II.     JURISDICTION AND VENUE

6. Jurisdiction over Plaintiff's claims arising from the Defendants' violations of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

7. Jurisdiction over the state law claim is conferred upon this Court by 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) and (c).

## III.    THE PARTIES

9. Plaintiff Kelsea Mercer is the daughter of Jennifer Ohlinger; is the duly appointed Administrator of the Estate of Jennifer Ohlinger; and is bringing this action for the benefit of Jennifer's surviving family members and next of kin.

10. Defendants Athens County; Hocking County; Morgan County; Perry County; and Vinton County are units of local government organized under the laws of the State of Ohio. These Defendants are a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

11. Defendant James Gray II, RN was, at all times relevant to this action, employed by SEORJ and/or the counties mentioned above as a nurse at SEORJ. Defendant Gray is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

12. Defendants Charity Lowery; Amista Jarvis; and Cody Gilbraith were, at all times relevant to this action, employed by SEORJ and/or the counties mentioned above as jail officers at SEORJ. They are a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. They are sued in both their individual and official capacities.

13.     Defendant Joshua D. VanBibber was, at all times relevant to this action, employed by the SEORJ and/or the counties mentioned above as the warden at SEORJ. Defendant VanBibber is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

### IV.    FACTS

14.     The decedent, Jennifer Ohlinger, was arrested, booked, and brought to SEORJ on June 20, 2018.

15.     While in SEORJ, Jennifer had been charged with a crime, but had not been convicted of anything.

16.     Accordingly, she was a pre-trial detainee and was thus guaranteed the right, under the due process clause of the Fourteenth Amendment, to proper medical care.

17.     If Jennifer was deemed to be a prisoner who technically had already been convicted of a crime, she was thus guaranteed the right to be protected from cruel and unusual punishment and the right to proper medical care under the Eighth Amendment of the United States Constitution.

18.     At all times relevant, SEORJ had a policy and procedure that indicated "if hospital-level care is required, the inmate will be transported to a local hospital for evaluation and treatment."

19.     At all times relevant, SEORJ had a policy and procedure that indicated if an inmate suffered a head injury and then either had a "seizure after injury" or demonstrated "unusual behavior," then a consult to a physician or transfer to the emergency department should take place.

20.     On January 25, 2018, before 7:00 a.m., Jennifer Ohlinger exited her cell and walked into an inmate common area at SEORJ.

21.     Jennifer sat down on a bench, but then fell over onto the floor and hit her head hard.

22. Jennifer laid flat on the floor for a significant period of time and appeared to be having a seizure.

23. Other inmates summoned Officer Charity Lowery, who came over to examine Jennifer.

24. Officer Charity Lowery asked Officers Amita Jarvis and Cody Gilbraith to go and get the jail nurse because Jennifer had fallen, appeared to have had a seizure, and "had hit her head pretty hard."

25. James Gray II, RN, the jail nurse, arrived and performed a quick examination of Jennifer in the common area and then instructed the officers to return Jennifer back to her bed. Nurse Gray did not contact a doctor; did not order Jennifer be transferred to a hospital; and did not notify his supervisor.

26. The security camera video demonstrates Jennifer was staggering and had to be guided back to her bed by one of the jail officers, believed to be Officer Jarvis.

27. Approximately fifteen minutes later, Officers Lowery was summoned to Jennifer's bed by another inmate because the inmate thought Jennifer was "having another seizure."

28. Officers Lowery and Jarvis took Jennifer to the Medical Room at SEORJ to be examined by Nurse Gray again.

29. The officers had to change Jennifer's clothes because she urinated on herself.

30. Nurse Gray examined Jennifer for a second time and noted Jennifer had hit her head on the bench earlier; had demonstrated seizure like activity; and was complaining of a headache.

31. Despite Nurse Gray's findings and the SEORJ's policies and procedures concerning notifying a doctor and transporting inmates to the hospital for evaluation and treatment, Nurse Gray instructed the officers to return Jennifer to her bed for a second time. Nurse Gray did not

6

contact a doctor; did not order Jennifer be transferred to a hospital; and did not notify his supervisor.

32. Approximately two hours later, Officer Lowery was summoned to Jennifer's cell and she was told by other inmates "she [Jennifer] is dead."

33. Officer Lowery examined Jennifer and found she did not have a pulse and there was foam coming from her mouth.

34. Nurse Gray and other jail personnel, including Warden VanBibber, were summoned to Jennifer's cell and Nurse Gray attempted to revive Jennifer with CPR.

35. For the first time, an ambulance was called for Jennifer.

36. Jennifer was taken to O'Bleness Hospital in Athens and was then transferred to a level one trauma center in Columbus, Ohio.

37. Diagnostic tests performed at the hospital revealed Jennifer was suffering from bleeding on her brain caused by seizures and her hitting her head.

38. Jennifer incurred medical expenses and experienced pain and suffering and other noneconomic damages up until the time of her death on June 26, 2018.

39. Dr. William Gormley, a neurosurgeon who teaches at Harvard Medical School, reviewed the videos, medical records, radiology images, and other evidence in this matter, and states Jennifer's brain condition and injury were treatable and her death was preventable. Sadly, Jennifer never had that chance because the Defendants' conduct sealed her fate.

40. Jennifer was never seen by a physician during the time she was incarcerated at SEORJ.

41. Nurse Gray never consulted with a doctor; never called 911; and never contacted his supervisor concerning Jennifer's serious medical condition.

42. Officers Lowery, Jarvis, and Gilbraith similarly never contacted a doctor; never called 911; and never notified their supervisor that Jennifer was having serious medical issues over a significant period of time on June 25, 2018.

43. Jennifer was just 38 years of age when she died.

### V.  FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 CLAIM
### RIGHT TO ADEQUATE MEDICAL CARE

44. Plaintiff reavers and realleges each and every allegation contained in the proceeding paragraphs as if fully written herein.

45. From the time Jennifer Ohlinger was booked at SEORJ until the time of her death, the Defendants Gray, Lowery, Jarvis, and Gilbraith denied Jennifer proper medical care in violation of her Eighth and/or Fourteenth amendment constitutional rights.

46. Defendants Gray, Lowery, Jarvis, and Gilbraith were aware Jennifer had an urgent serious medical need and required prompt medical care.  She was suffering from seizures; had hit her head; and had a brain injury that could have been treated which would have prevented her death.

47. Defendants Gray, Lowery, Jarvis, and Gilbraith knew there was a substantial risk to Jennifer's health if she went untreated but denied her appropriate medical treatment.

48. It was objectively unreasonable for Defendants Gray, Lowery, Jarvis, and Gilbraith to ignore the numerous objective signs and symptoms of a serious medical condition, which occurred over a significant period of time.  Any diligent nurse and/or jail officer would have been apprised of Jennifer's serious medical condition and promptly called a doctor; summoned paramedics in order to hospitalize Jennifer; and called the warden or a supervisor.

8

49. Defendants Gray, Lowery, Jarvis, and Gilbraith, by failing to correctly address the situation and failing to provide proper medical attention, acted with deliberate indifference to a serious health condition and the medical needs of Jennifer Ohlinger.

50. The tortious conduct of Defendants Gray, Lowery, Jarvis, and Gilbraith violated Jennifer's constitutional rights guaranteed under 42 U.S.C. § 1983, and the Eighth and/or Fourteenth Amendments to the United States Constitution. These Defendants knew that by failing to treat Jennifer's urgent medical condition, that it would lead to a fatality, but not before Jennifer endured significant pain and suffering during the period preceding her death.

### VI. SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 CLAIM FAILURE TO TRAIN AND SUPERVISE/UNCONSTITUTIONAL CUSTOM, PRACTICE, OR POLICY

51. Plaintiff reavers and realleges each and every allegation contained in the proceeding paragraphs as if fully written herein.

52. Defendant Gray was routinely and improperly called upon to assess the health status of inmates and was performing services beyond that legally authorized for his licensure.

53. Defendants Athens County; Hocking County; Morgan County; Perry County; Vinton County; and Joshua D. VanBibber failed to adequately train and supervise Defendant Gray, other members of the medical staff, and the corrections officers in the assessment, monitoring, and treatment of inmates in serious medical need.

54. Further, the rules, regulations, customs, policies, and procedures of Defendants Athens County; Hocking County; Morgan County; Perry County; Vinton County; and Joshua D. VanBibber regarding the treatment and management of persons requiring specialty medical care were inadequate, unreasonable, and deliberately indifferent and were the moving force behind the constitutional deprivations suffered by Jennifer Ohlinger.

## VII. THIRD CAUSE OF ACTION – WRONGFUL DEATH

55. Plaintiff reavers and realleges each and every allegation contained in the proceeding paragraphs as if fully written herein.

56. Defendants' tortious conduct caused the wrongful death of Jennifer Ohlinger resulting in damages recoverable under R.C. § 2125.02.

WHEREFORE, Plaintiff requests that this Court award the following:

- Compensatory damages in an amount be shown at trial;

- Punitive damages against Defendants Gray, Lowery, Jarvis, Gilbraith, and VanBibber in an amount to be shown at trial;

- Costs incurred in this action and reasonable attorney fees;

- Prejudgment interest; and

- Such other further relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ R. Craig McLaughlin

_____
R. Craig McLaughlin (0068765)
Elk & Elk Co., Ltd.
6105 Parkland Blvd., Suite 200
Mayfield Heights, OH 44124
Phone: (440) 442-6677
Fax: (440) 442-7944
Email: rmclaughlin@elkandelk.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues for which a jury trial is appropriate.

/s/ R. Craig McLaughlin

_____
R. Craig McLaughlin (0068765)